**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**New Cingular Wireless PCS LLC d/b/a AT&T Mobility,**
**Plaintiff,**

**v.**

**City of Maize, Kansas, and Maize City Council,**
**Defendants.**

**Case No. 6:26-cv-01024-JMK-JBW**

**MEMORANDUM AND ORDER**

This is an action brought by New Cingular Wireless PCS LLC d/b/a AT&T Mobility ("AT&T") against the City of Maize, Kansas, and the Maize City Council (collectively "City") under the Kansas Siting Act and the Telecommunications Act of 1996. AT&T seeks to have its application for a conditional use permit approved by operation of law. Both AT&T and the City have filed motions for judgment on the pleadings on Count II under Federal Rule of Civil Procedure 12(c). The Court denies AT&T's motion, grants the City's motion, and dismisses Count II because the City made a final decision on the application within the 150-day statutory period.

## I. BACKGROUND

AT&T maintains a network of cell sites that send and receive radio signals. Doc. 1 at ¶ 36. AT&T wanted to install an approximately 155-foot wireless communication tower in the City to strengthen its wireless network coverage. *Id.* at ¶¶ 3, 42. On August 6, 2025, AT&T applied for a conditional use permit to build the communication tower. *Id.* at ¶ 3. On November 6, 2025, the City's Planning Commission ("Commission") held a hearing on AT&T's application. *Id.* at ¶ 49. After evaluating the application, the Commission denied AT&T's application on November 7,

2025.[1] *Id.* at ¶ 54. AT&T appealed the Commission's decision to the City Council on November 19, 2025. *Id.* at ¶ 56.

On January 16, 2026, AT&T provided notice to the City, alleging that AT&T's application was automatically approved under K.S.A. 66-2019(h)(5). *Id.* at ¶ 58. On January 19, 2026, the City Council held a hearing to review AT&T's application on appeal. *Id.* at ¶ 59. The City Council denied AT&T's application on appeal on January 21, 2026. *Id.* at ¶ 65. AT&T filed this action shortly after to enforce an approval by operation of law under the Kansas Siting Act and the Telecommunications Act of 1996. *See generally* Doc. 1. Count II of this action alleges that the City failed to act within the statutorily prescribed time limit under the Kansas Siting Act, causing AT&T's application to be approved by operation of law. *Id.* at ¶¶ 79–88. Both parties have moved for judgment on the pleadings for Count II under Federal Rule of Civil Procedure 12(c). *See* Docs. 16, 20.

## II. LEGAL STANDARD

Courts evaluate a Rule 12(c) motion using the same standard as a motion to dismiss under Rule 12(b)(6). *Sanchez v. U.S. Dep't of Energy*, 870 F.3d 1185, 1199 (10th Cir. 2017). Under Rule 12(b)(6), the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Cross motions for judgment on the pleadings 'simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed.'" *Hulsing v. Larimer*, 2023 WL 8235105, at *1 (D. Kan. Nov. 27, 2023) (alteration in original) (quoting *Mercury Sys., Inc. v. S'holder Representative Servs., LLC*, 820 F.3d 46, 51 (1st Cir.

---

[1] Although the City issued its written decision on November 7, 2025, the Commission voted to deny the application on November 6, 2025. This difference is not factually or legally significant for purposes of the parties' dispute.

2016)). Judgment on the pleadings is appropriate when "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012).

## III. ANALYSIS

### A. Review and a decision by the Commission satisfied the Kansas Siting Act.

This is a matter of statutory interpretation. The facts underlying Count II are not in dispute. *Compare* Docs. 16, 17 *with* Doc. 20. The Kansas Siting Act ("Act") governs the process of applying for permits to construct, modify, maintain, and operate wireless facilities. The Act defines which authorities can grant or deny permits, creates obligations for those authorities, and establishes remedies for applicants if those authorities fail to comply with the statute. K.S.A. 66-2019. When an application to construct a wireless facility is submitted, the Act requires authorities to review the application, make a final decision to approve or disapprove the application, and advise the applicant in writing of the final decision within 150 days. K.S.A. 66-2019(h)(1). The Act further mandates that "an application shall be deemed approved if an authority fails to act on an application . . . within the 150-calendar day review period specified." K.S.A. 66-2019(h)(3). The Act further defines "Authority" to mean "any governing body, board, agency, office or commission of a city, county, or the state that is authorized to make legislative, quasi judicial, or administrative decisions concerning an application." K.S.A. 66-2019(b)(5).

The parties agree that AT&T applied for a conditional use permit on August 6, 2025. They further agree that the Commission is a valid authority as defined in subsection (b)(5) of the Act. And they agree that the Commission reviewed the application, voted against its approval, and issued a decision on November 7, 2025. But the parties disagree about whether the Commission's denial was a final decision under subsection (h)(1)(B). AT&T argues that the Commission's denial did not qualify as a "final decision" because it was appealed under the City's Zoning Code.

According to AT&T, once it appealed the Commission's decision, the denial was no longer "final," and the governing body was required to take final action to comply with the Act. The Court disagrees.

The Act requires that, within 150 days of receipt of a conditional use application, "an authority shall . . . (A) Review the application . . . [and] (B) make a final decision to approve or disapprove the application." K.S.A. 66-2019(h)(1). The requirement to review and make a decision is placed on "an authority." There is no dispute that the Commission was an authority as defined by the Act. And this is confirmed by the City's Zoning Code, which gives the Commission authority to "approve, approve with conditions or modifications, or deny the application for Conditional Use approval" after public hearing. City of Maize Zoning Code, Art. V, § D(6); *see also* Art. VI, § C(3) ("The Planning Commission shall have the authority to approve, approve with conditions or modifications, or deny applications for Conditional Use approval when not accompanied by a rezoning application."). As AT&T has conceded, the Commission "is authorized by law to make legislative, quasi judicial or administrative decisions concerning an application." K.S.A. 66-2019(b)(5).

The City's governing body—the City Council—is also an authority under subsection (b)(5) of the Act. If a decision of the Commission is appealed, the City Council can consider the application, hold a hearing, and issue a decision. City of Maize Zoning Code, Art. V, § D(7). But the City Council is a different authority than the Commission, both under the terms of the Act and the City's Zoning Code. The Act defines an authority as a "governing body . . . *or* commission of a city." K.S.A. 66-2019(b)(5) (emphasis added). Taken together, the use of "or," or the disjunctive list, in subsection (b)(5), and the reference to "an authority" in subsection (h)(1) reveal that the Commission's decision, alone, satisfied the requirement that *an authority* review and take action

on an application within 150 days. *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 116 (2012). AT&T's proposed interpretation of the Act—which would impose a review and decision requirement on both the Commission and the City Council—would read additional obligations into the Act. In this circumstance, it would require that *all* authorities, rather than "an authority," act on an application with 150 days. Such a requirement goes beyond the plain meaning of subsection (h)(1) of the Act, which simply requires that an authority—like the Commission—review and either approve or disapprove the application within 150 days.

**B. AT&T's appeal did not nullify the Commission's denial of AT&T's application.**

To argue that the City Council, and not the Commission, is the relevant authority under K.S.A. 66-2019(h)(1), AT&T relies on Article V, § D(6) of the City's Zoning Code. That section provides that the Commission's decision "shall be the final action on the Conditional Use application except when . . . the applicant appeals the action of the Planning Commission." City of Maize Zoning Code, Art. V, § D(6);[2] *see also* Art. VI, § C(3) ("The Planning Commission's decision on such an application may be appealed to the Governing Body."). And so, AT&T argues that the Commisssion's denial did not constitute a "final decision" under K.S.A. 66-2019(h)(1)(B) because AT&T appealed the decision. Although AT&T concedes that the Commission took final action, AT&T argues that its appeal of that action stripped it of its finality. Doc. 25 at. 5.

AT&T's reliance on one phrase in the zoning code—"except when . . . the applicant appeals"— stretches the Act's requirements beyond both its plain reading and common sense, especially when the entire Zoning Code, as well as the Act, are considered. The Act, which applies

---

[2] The City of Maize Zoning Code is permalinked at https://perma.cc/K4D7-VD8Q.

broadly to any "authority" in city, county, or state government, requires a final decision within 150 days of an application. It does not contemplate the existence of contingent final decisions, such as the Commission's final decision subject to appeal. Nor does it contemplate the involvement of multiple authorities or multiple decisions. The plain, common-sense reading of the Act prohibits local agencies from delaying or ignoring applications. That is why, under the Act, the remedy sought by AT&T—approval of the application by the operation of law—arises "if an authority fails to act on an application." K.S.A. 66-2019(h)(3).

And although Commission decisions are appealable to the governing body, it does not follow that the Commission's denial of AT&T's conditional use application failed to satisfy the Act's requirement for timely action. The City's Zoning Code vests significant authority in the Commission. It gives the Commission authority to "approve, approve with conditions or modifications, or deny the application for Conditional Use approval" after public hearing. City of Maize Zoning Code, Art. V, § D(6); *see also* Art. VI, § C(3) ("The Planning Commission shall have the authority to approve, approve with conditions or modifications, or deny applications for Conditional Use approval when not accompanied by a rezoning application."). Although the Commission's decisions may be appealed to the City Council, the Commission is empowered by the City's Zoning Code to take "final action" on conditional use applications. City of Maize Zoning Code, Art. V, § D(6). The City plainly complied with K.S.A. 66-2019(h)(1) when the Commission—a valid authority—reviewed AT&T's application, voted against its approval, and issued a final decision within the 150-day statutory period.

AT&T's use of Article VI of the Zoning Code is also unavailing. Article VI, § B(3) states that the Commission's decision may be appealed to the City Council, whose decision "shall be the final local action." City of Maize Zoning Code, Art. VI, § B(3). AT&T argues that because of this

mandatory language, the City Council's decision—not the Commission's decision—is the final local action. But this misses the point. The Act requires *an authority* to make *a final decision*. It does not require one authority to make a final decision only after another authority has first made a final, appealable decision. Nor does it require a final decision after exhaustion of all administrative remedies. K.S.A. 66-2019(h)(1)(B). And the Zoning Code recognizes that appealable decisions are still final actions. *See* City of Maize Zoning Code, Art. V, § A(5) (listing persons with standing to appeal and including "any other person determined by either the body taking the *final, non-appellate, action* or by the appellate body to be actually or potentially aggrieved by the action or proposed action") (emphasis added).

Finally, AT&T's interpretation of the Act would render the Act ineffective. *See* Scalia & Garner, *supra*, at 63 ("The presumption against ineffectiveness ensures that a text's manifest purpose is furthered, not hindered."). The Act requires "an authority" to act within 150 days of receipt of an application. K.S.A. 66-2019(h)(1). AT&T concedes that the Commission is "an authority" as defined in the Act. The City Council is also an authority. K.S.A. 60-2019(b)(5). Under the Act, the 150-day deadline on which AT&T relies begins running "when the application is submitted." K.S.A. 60-2019(h)(2)(A). The Act defines an "application" as "a request submitted by an applicant *to an authority*." K.S.A. 60-2019(b)(4) (emphasis added). Under the Zoning Code, conditional use permits are submitted to "the Planning Administrator" who sets a hearing before the Commission. Art. V, §§ D(3)-(4). If the Commission's decision is appealed, the application "is forwarded to the Governing Body." Art. V, §§ D(6)-(7).

Did the clock start running for the governing body when the application was made to the Planning Administrator? Or did a new 150-day timeline start when the application was forwarded to the City Council upon AT&T's appeal? That question is not before the Court, but it is a question

that would arise if AT&T's construction of the Act and the Zoning Code were to carry the day. As would the apparent inconsistency that, under AT&T's construction of the Act, two applications could be submitted on the same day, the Commission could issue a decision 100 days later and would be found to comply with the Act for one application, and violate the Act for the other, based solely on whether not the applicant—or any other person with standing—chose to appeal. *See* Art V., § A(5) (identifying various parties, including any nearby landowner, with standing to appeal a zoning decision).

The evident purpose of the Act is to require local agencies to act on permits for the construction of wireless facilities in a timely manner. This is clear from the Act's mandate that an application is deemed approved "if an authority fails to act." K.S.A. 66-2019(h)(3). The Act is not meant to create a variety of unpredictable contingencies that turn on the specific nuances of a particular municipal code. Nor is the Act meant to allow for varying deadlines and automatic approval under the operation of law while a once-final decision is being appealed. The City met its obligation under the Act when the Commission took its final, non-appellate, action on November 7, 2025.

**C. Other statutory constructions of "final decision" are distinguishable.**

AT&T also discusses cases addressing other statutes where courts have interpreted "final decision" to mean a decision made after all administrative appeals have been exhausted. AT&T therefore argues a "final decision" requires full exhaustion of administrative appeals. But AT&T's cited statutes and caselaw either address different subjects or present contexts that indicate a different meaning. "An important rule of statutory construction . . . is that identical words . . . on a similar subject are interpreted to have the same meaning in the absence of anything in the context to indicate that different meaning was intended." *Banister v. Carnes*, 9 Kan. App. 2d. 133, 136–37 (1983).

AT&T first quotes *Cusintz v. Cusintz*, 195 Kan. 301, 302 (1965), for the proposition that Kansas courts have interpreted "final decision" to mean "one which finally decides and disposes of the entire merits of the controversy." AT&T then argues that a decision subject to administrative appeal cannot satisfy this standard. But *Cusintz* addressed only whether the Kansas Supreme Court had appellate jurisdiction over an appeal of an interim order of a state district court, which is a different context entirely from the issue before the Court. *Id.* at 302. *Cusintz* has no bearing on the meaning of "final decision" within the Act.

AT&T next points to *Goldblatt v. Unified Government of Wyandotte County/Kansas City*, 2017 WL 2617151 (Kan. App. June 16, 2017), to support its argument that a planning commission's decision is not final. In *Goldblatt*, the plaintiff challenged restrictions imposed on the renewal of a restaurant's special use permit. *Id.* at *1. The plaintiff was not the permit applicant but appealed as an aggrieved person. *Id.* at *3. The district court dismissed the plaintiff's suit for lack of standing and the Court of Appeals affirmed. *Id.* at *4. The appellate court then addressed the government's alternate argument that the district court lacked subject matter jurisdiction because the plaintiff failed to exhaust his administrative remedies before filing suit. *Id.*

The court noted that K.S.A. 12-760 allows aggrieved persons to file an action in district court "within 30 days of the *final decision* of the city or county," but it concluded that the commission's decision was not a "final decision" under K.S.A. 12-760 because the plaintiff had not appealed the commission's decision to the Board of Zoning Appeals as contemplated by K.S.A. 12-759. *Id.* at *4–5. And so, *Goldblatt* addressed whether a party had "exhaust[ed] all available and adequate remedies before filing a petition for judicial review of an agency action," rather than whether a local authority had carried out its statutory obligation to act. *Id.* at *5 (quoting *Rebel v.*

*Kan. Dep't of Revenue*, 288 Kan. 419, 427 (2009)). Again, that is a different context from the instant case and *Goldblatt* is not controlling here.

Finally, AT&T argues that, under *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997), the Commission's decision is not final because it does not "mark the 'consummation' of the agency's decisionmaking process." But, like *Goldblatt*, *Bennett* addressed whether the petitioners had standing to seek judicial review of government action. *Bennett*, 520 U.S. at 157. And, as addressed above, whether a party has standing to seek judicial review of government action differs from whether a governmental authority complied with its statutory obligation to act in a timely manner.

AT&T's arguments fail to show that the Commission's denial is not a "final decision" under K.S.A. 66-2019(h)(1)(B). Because the Commission timely complied with its obligations under K.S.A. 60-2019(h)(1), AT&T's application could not be deemed approved under subsections (h)(3) and (h)(5). The City is entitled to a judgment as a matter of law on Count II.

## IV. CONCLUSION

THE COURT THEREFORE ORDERS that New Cingular Wireless PCS LLC d/b/a AT&T Mobility's Motion for Judgment on the Pleadings (Doc. 16) is DENIED. City of Maize, Kansas, and Maize City Council's Motion for Judgment on the Pleadings (Doc. 20) is GRANTED. Count II of AT&T's Complaint is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Dated: September 9, 2026

s/ Jeffrey M. Kuhlman
JEFFREY M. KUHLMAN
UNITED STATES DISTRICT JUDGE